IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 10-cv-01628-MSK-MJW

JOSEPH M. FLOREZ, IV,

    Plaintiff,

v.

LT. MICK McCORMAC, Intel Investigator, Buena Vista correctional Facility, and
C.O. TIMOTHY EDMONDS, Corrections Officer, Buena Vista correctional Facility,

    Defendants.
_____

**OPINION AND ORDER GRANTING MOTION TO DISMISS**
_____

**THIS MATTER** comes before the Court pursuant to the Defendants' Motion to Dismiss **(# 33)**, Mr. Florez's response[1] **(# 38)**, and the Defendants' reply **(# 42)**. Without leave of the Court, Mr. Florez filed a surreply **(# 58, 59)**. The Defendants have not lodged any objection to Mr. Florez's filing of a surreply and, in the interests of ensuring that Mr. Florez is fully heard, the Court considers it.

**FACTS**

The facts of the case as it currently stands are simple. Mr. Florez is an inmate in the custody of the Colorado Department of Corrections ("CDOC"). According to Mr. Florez's Amended Complaint **(# 15)**, on or about February 28, 2008, Mr. Florez was transferred to Administrative Segregation based on an alleged disciplinary violation. During that transfer,

---

[1] Mr. Florez also filed a "cover letter" **(# 39)** with his response, elaborating his argument. The Court has considers both documents to jointly constitute Mr. Florez's response.

Defendant Edmonds was responsible for collecting and logging Mr. Florez's personal property in his cell. Defendant Edmonds confiscated Mr. Florez's Bible, and sent it to Defendant McCormac to be examined.[2] On March 4, 2008, a disciplinary hearing was held and Mr. Florez's Bible was used as evidence against him. Mr. Florez was acquitted of the disciplinary charges and inquired of Mr. McCormac about getting his Bible back. At some point in time, Mr. McCormac returned two pages torn out of the back of the Bible to Mr. Florez, and Mr. McCormac retained the rest. By May 3, 2008, Mr. Florez learned that his Bible had been discarded in the trash by Mr. McCormac. Mr. Florez was unable to obtain a replacement Bible for a period of 138 days.

Mr. Florez commenced this action on or about June 24, 2010.[3] He asserted a variety of claims pursuant to 42 U.S.C. § 1983, but Judge Arguello (acting on behalf of Senior Judge Weinshienk) *sua sponte* dismissed as frivolous all but Mr. Florez's claim that the confiscation and disposal of his Bible deprived him of his First Amendment right to the Free Exercise of religion for the 138-day period.

The Defendants move to dismiss **(# 33)** Mr. Florez's remaining claim on statute of limitations grounds. They note that claims under 42 U.S.C. § 1983 are subject to a two-year statute of limitations, *Braxton v. Zavaras*, 614 F.3d 1156, 1160 (10th Cir. 2010). They contend

---

[2] Other filings in this case indicate that Mr. Edmonds believed the Bible may have constituted contraband because Mr. Florez had written the names and addresses of unknown persons on pages in it.

[3] Mr. Florez's *pro se* Motion for Leave to Proceed *In Forma Pauperis* is signed and dated on Jne 24, 2010. It was received and filed by the Clerk of the Court on July 1, 2010. The Court assumes, without necessarily finding, that Mr. Florez can demonstrate compliance with the "prison mailbox rule" described in *Price v. Philpot*, 420 F.3d 1158, 1165 (10th Cir. 2005), and thus, the Court will treat his suit as commenced on June 24, 2010.

2

that that statute began running, at the latest, by May 3, 2008, the date Mr. Florez learned that his Bible had been discarded. Thus, the Defendants contend, Mr. Florez's suit, commenced more than two years later on June 24, 2010, is untimely.

Mr. Florez has offered several arguments in opposition. Initially, he appeared to contend that the statute of limitations did not begin running or was otherwise tolled until he completed CDOC's mandatory Administrative Remedy program on June 26, 2008. After the Defendants' reply brief that argued that prison grievance procedures do not toll statutes of limitations, Mr. Florez filed a surreply presenting a different argument: that he was suffering a "continuous and ongoing harm" from the deprivation of his Bible, such that his statute of limitations was constantly accruing until he obtained the replacement Bible on or about July 17, 2008.

## ANALYSIS

### A. Standard of review

#### 1. *Pro se* filings

In considering the Mr. Florez's filings, the Court is mindful of his *pro se* status, and accordingly, reads his pleadings liberally. *Haines v. Kerner,* 404 U.S. 519, 520-21 (1972). However, such liberal construction is intended merely to overlook technical formatting errors and other defects in his use of legal terminology and proper English. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). *Pro se* status does not relieve Mr. Florez of the duty to comply with the various rules and procedures governing litigants and counsel or the requirements of the substantive law, and in these regards, the Court will treat Mr. Florez according to the same standard as counsel licensed to practice law before the bar of this Court. *See McNeil v. U.S.*, 508 U.S. 106, 113 (1993); *Ogden v. San Juan County*, 32 F.3d 452, 455 (10th Cir. 1994).

2. <u>Motion to Dismiss</u>

In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all well-plead allegations in the Complaint as true and view those allegations in the light most favorable to the nonmoving party – Mr. Florez. *Stidham v. Peace Officer Standards and Training*, 265 F.3d 1144, 1149 (10th Cir. 2001), *quoting Sutton v. Utah State Sch. For the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999). The Complaint should not be dismissed for failure "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Benefield v. McDowall,* 241 F.3d 1267, 1270 (10th Cir. 2001); *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997). The Court must limit its review to the four corners of the Complaint, but may also consider documents attached to the Complaint as exhibits, *Oxendine v. Kaplan*, 241 F.3d 1272, 1275 (10th Cir. 2001), as well as unattached documents which are referred to in the Complaint and central to the plaintiff's claim, so long as the authenticity of such documents is undisputed. *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002); *Dean Witter Reynolds, Inc. v. Howsam*, 261 F.3d 956, 961 (10th Cir. 2001).

**B.  Statute of limitations**

The question presented here is when Mr. Florez's statute of limitations accrued and, once it began running, whether it was tolled.

A claim accrues, and the statute of limitations thus begins running, when the facts necessary to support a claim are or should be apparent to a Plaintiff. *Thorpe v. Ancell*, 367 Fed.Appx. 914, 920 (10th Cir. 2010) (unpublished), *citing Fratus v. DeLand*, 49 F.3d 673, 675 (10th Cir. 1995). There can be little dispute that Mr. Florez knew of facts giving rise to his claim

for deprivation of his Free Exercise results by, at the latest, May 3, 2008. He acknowledges that, by that date, he knew that Mr. McCormac had thrown away the Bible, thus permanently depriving Mr. Florez of it. Thus, Mr. Florez's statute of limitations began running on May 3, 2008, and expired two years later, on May 3, 2010. Mr. Florez's suit, filed on June 24, 2010, is thus untimely by a period of approximately six weeks.

Mr. Florez has argued that his statute of limitations was tolled during the pendency of his exhaustion of CDOC's grievance procedure. The 10th Circuit has, in circumstances functionally identical to those presented here, concluded that an inmate's exhaustion of CDOC's grievance procedure does not toll the running of the statute of limitations. *Braxton*, 614 F.3d at 1162. Precisely the same analysis would warrant the conclusion that Mr. Florez's statute of limitations ran unimpeded once it accrued.

Thus, the Court is left with Mr. Florez's argument that, because he continued to be deprived of the Bible for a period of 138 days, his statute of limitations repeatedly accrued each day until July 2008, thus rendering his claim timely. In certain contexts, courts recognize a "continuing violation" doctrine that treats otherwise untimely instances of conduct as timely if they are part of a "continuing pattern" of unlawful acts. *Fogle v. Slack*, 2011 WL 1334394 (10th Cir., April 8, 2011) (slip op.), *citing Hunt v. Bennett*, 17 F.3d 1263, 1266 (10th Cir. 1994). In *Fogle*, the 10th Circuit acknowledged that it "has yet to decide whether the continuing violation doctrine applies in § 1983 cases." *Id.* at *4. However, the court declined to specifically address the applicability of the doctrine in that case, noting that "each claim involved discrete decisions or discrete conduct making the continuing violation doctrine inapplicable." *Id.*

A similar conclusion is warranted here. The "continuing violation" doctrine has its

genesis in employment law, specifically where an employer promulgates "a continuing policy and practice of discrimination that began before the statutory filing period, as long as the employer continues to apply the discriminatory policy and practice to a point within the relevant filing period." *Furr v. AT&T Technologies, Inc.*, 824 F.2d 1537, 1543 (10th Cir. 1987), *cited in Hunt*, 17 F.3d at 1266.  However, the Supreme Court has dramatically limited the scope of the continuing violation doctrine in the field of employment discrimination, finding that the doctrine does not apply to claims arising from "discrete acts" whose occurrence and consequences are readily identifiable; it is available only in situations where the claim arises from a pattern of connected acts, occurring over a period of time, each of which might not be separately actionable on its own (*e.g.* hostile environment harassment claims).  *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115-16 (2002).  Assuming that the continuing violation doctrine is portable to the § 1983 context, the limitations imposed by *Morgan* would seem to apply as well.  Thus, a § 1983 plaintiff seeking to invoke the continuing violation doctrine to rescue an otherwise untimely claim must demonstrate that the claim arises not out of any discrete, identifiable act by a defendant, but rather, out of a lengthy pattern of interconnected acts that, of their own, might not individually be actionable but which collectively give rise to a claim.

Here, Mr. Florez's Free Exercise claim is readily traceable to a single, discrete act whose occurrence and consequences were readily apparent: the disposal of his Bible.  Although that discrete act had ongoing consequences affecting Mr. Florez's ability to practice his religion, those consequences flowed directly from the discrete act itself, not from a pattern of interconnected acts of indeterminate individual significance.  In this sense, Mr. Florez's argument is similar to that rejected by the Supreme Court in *Ledbetter v. Goodyear Tire &*

*Rubber Co.*, 550 U.S. 618, 628 (2007), *superseded by statute,* P.L. 111-2. There, the plaintiff employee contended that discriminatory compensation decisions made years earlier continued to manifest its consequences in each of the employee's current paychecks. The Supreme Court rejected the notion that the reverberating consequences of discrete acts in the past – acts that fall outside the limitations period – warranted application of the continuing violation doctrine. *Id.* at 625 ("In essence, she suggests that it is sufficient that discriminatory acts that occurred prior to the charging period had continuing effects during that period. . . . This argument is squarely foreclosed by our precedents"). Similarly, Mr. Florez argues that the untimely discrete act of Mr. McCormac destroying his Bible has had timely consequences on Mr. Florez's ability to practice his religion. *Ledbetter* rejects this argument,[4] and therefore, this Court must also.

Accordingly, the Court finds that Mr. Florez's First Amendment claim arises from a discrete act by Mr. McCormac, an act whose occurrence and consequences are readily ascertainable. Under these circumstances, the continuing violation doctrine does not apply to toll the accrual or running of the statute of limitations, nor otherwise extend the limitations period beyond two years from Mr. McCormac's act (or, at the latest, Mr. Florez's discovery thereof). According to the facts alleged by Mr. Florez, the statute of limitations began running in

---

[4]The fact that Congress subsequently acted to reverse the Supreme Court's decision as it related to claims of discriminatory compensation does not suggest that Congress similarly repudiated *Ledbetter*'s analysis of the operation of the continuing violation doctrine. The Congressional fix of P.L. 111-2 specifically defines when "an unlawful employment practice occurs, with respect to discrimination in compensation" to include "when an individual is affected by application of a discriminatory compensation decision or other practice, including each time wages, benefits, or other compensation is paid." If Congress disagreed more broadly with the route the Supreme Court regarding the continuing violation doctrine, beginning in *Morgan* and continuing in *Ledbetter*, it was free to pass a statute that specifically addressed the application of the doctrine.

early May 2008, and expired well before Mr. Florez commenced this action in late June 2010.

Thus, Mr. Florez's claim is untimely and is dismissed.

## **CONCLUSION**

For the foregoing reasons, the Defendants' Motion to Dismiss **(# 33)** is **GRANTED**. Mr. Florez's remaining claim is **DISMISSED**, and the Clerk of the Court shall close this case.

Dated this 3rd day of August, 2011

**BY THE COURT:**

_____

Marcia S. Krieger
United States District Judge